In the Matter of the Application of WALLACE H. EISS, Respondent, for a Mandamus Order against CHARLES E. SUMMERS and Others, as Water Commissioners of the Village of Williamsville, New York, Appellants.

Fourth Department, May 2, 1923.

Villages — mandamus by taxpayer to compel board of water commissioners to prepare plans and specifications and execute proposed contract with water company — original proposition approved by voters was modified materially by State Water Control Commission — prior application for mandamus was denied after modified plan resubmitted to voters was rejected — new facts not shown on this application — former determination is res judicata — remedy of petitioner was by appeal from former order — submission of proposition as modified for reconsideration was legal — court will not interfere with action of voters on reconsideration — vested rights of petitioner not affected — petitioner failed to show clear legal right to order.

In proceedings to obtain a peremptory mandamus order, instituted by a taxpayer of the village of Williamsville, to compel the board of water commissioners to prepare plans and specifications to be filed with the former State Water Power Commission and to execute and deliver a proposed contract with the village submitted by a water company for the purpose of securing a water supply, it appeared that the proposition to enter into a contract with the water company

and to raise money was carried by one vote; that the State Water Control Commission modified the plans materially and in such a way as to increase the cost to a considerable extent; that the board of water commissioners refused to go on with the proposition as modified and the petitioner applied for a peremptory mandamus order to compel them to proceed; that the court at Special Term suggested that the proposition as modified be resubmitted to the voters and after the modified plan had been rejected by the voters the court denied the application for the mandamus order; that thereafter the application in this proceeding was made.

*Held,* that the determination of the former application for a mandamus order is *res judicata* since no new material facts are shown on this application, and the prior application was not denied without prejudice or with leave to make a new application; the remedy of the petitioner, if he was aggrieved, was to appeal from the prior order denying his application.

While under section 56-a of the Village Law a proposition that has been defeated by a vote of the electors cannot again be submitted until the expiration of one year or until the next annual election, this does not prohibit the reconsideration and rescission of a proposition once adopted, if no person or any vested interest is affected thereby, and accordingly, though the resubmission of the modified plan was not made as provided by said section 56-a, the action of the voters in rejecting the modified plan was legal, and inasmuch as it was for the voters to say whether or not the modified plan should be carried out the court will not interfere to set aside their decision.

The petitioner has failed to show that he has any vested right or special interest in this matter whereby he suffers greater detriment than any other citizen, and, furthermore, he has not shown a clear legal right to a mandamus order but is endeavoring to compel the board of water commissioners to do what in the exercise of judgment and discretion it has declined to do.

APPEAL by the defendants, Charles E. Summers and others, from a peremptory mandamus order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 26th day of February, 1923, commanding them to prepare and file certain plans and specifications with the Water Control Commission of the State of New York, and to execute and deliver a proposed contract with the village of Williamsville, submitted by the Western New York Water Company.

*Wortley B. Paul,* for the appellants.

*Myron S. Short,* for the respondent.

DAVIS, J.:

Williamsville is a small village in Erie county with a population by the census of 1920 of 1,753. It owns a system of water works controlled by a board of water commissioners.

There was evidently some dissatisfaction with the water supply, the nature of which does not fully appear in the record. As a result of some agitation, a proposition was submitted to the voters in September, 1920, as to whether or not the village would contract with the Western New York Water Company for a different supply.

It was defeated by a majority of thirty-six votes. It was again submitted at the annual village election on March 15, 1921. The proposition submitted was, in brief, as to whether the board of water commissioners should be authorized to enter into a contract with the Western New York Water Company for supplying water to the village for general public use for a term of five years, and to provide for a minimum purchase of 100,000 gallons per day at thirteen dollars, all water supplied in excess of 100,000 gallons per day and less than 200,000 gallons to be paid for at the rate of thirteen cents for 1,000 gallons; and the sum of $10,000 be raised and expended for the purpose of laying and installing new water mains in Main street, the funds to be secured by issuing bonds of the village.

At this election it appears that the election officers first announced that the proposition was defeated by one vote; they then announced that the vote was a tie, and finally declared that it had been carried by one vote. An attempt to review the election was defeated on the ground that the law furnishes no remedy in such a case. (*Matter of Tamney* v. *Atkins*, 209 N. Y. 202.)

The commissioners were then required to submit their plans for an additional water supply to the former State Water Power Commission which pending the proceedings therein was changed to the State Water Control Commission. (Conservation Law, §§ 521, 522, as amd. by Laws of 1921, chap. 499, and Laws of 1922, chap. 413.) After hearing all parties interested, the Water Control Commission on April 26, 1922, made a decision " modifying " the application and imposing certain conditions, which in brief were, that the existing system should be maintained until such time as an adequate fire protection could be given by the Western New York Water Company, the pumps should be equipped with suitable electric motors, devices for sterilizing should be maintained and used, complete plans and specifications should be submitted to the Commission and approved by it, and the project completely carried out within two years.

It is claimed on the part of the appellants that this modification to a large extent changed the plans submitted to the electors, and entailed an expense double in amount for operation for which no money had been specifically appropriated, and that in the judgment and discretion of said water commissioners it was not advisable to proceed further; and that that position was approved by a majority of the citizens of the village.

The respondent does not fully dispute these facts. He admits the cost would be increased and disagrees with the appellants only in the amount. He says that a large item of expense was due to a mistake in the decision of the Water Control Commission, and

gives his opinion based upon a conversation with an engineer in the office of the Commission that the board of water commissioners will be relieved from a portion of the expense. He says, too, that the Western New York Water Company will bear the expense of pumping, not exceeding $350, if the contract is made. These suggestions do not fully meet the objection raised by the board, that the modification of the plans by the Water Control Commission make an entirely different proposition from that voted on by the citizens of Williamsville, and involve much greater expense.

The petitioner, who gives no further reason for his interest in the matter than that he is a resident of the village and the owner of real estate taxed therein, made a prior application for a peremptory mandamus order at Special Term, asking the same relief as is asked here. When the matter came on to be heard the same questions were raised and counsel disagreed as to the attitude of the voters in the village relative to the proposition as modified by the Water Control Commission. The board of water commissioners had already petitioned to resubmit the question but the board of trustees had declined. The court at Special Term suggested that the proposition be resubmitted to ascertain the will of the inhabitants of the village on the modified plan, and that action was taken. Both sides engaged in an active campaign by advertisements and circulars, calling attention of the voters to arguments for and against the proposition. The proposition was defeated by a majority of eleven. The court then on September 18, 1922, denied the application for the writ. The new proceeding was instituted by an order to show cause, dated November twenty-second following. The appellants allege, and it is not denied, that the voters have given further evidence of their disapproval of the plan by defeating candidates in the village election who were favorable to the proposition.

I have not discovered any new material facts shown on this application which were not before the Special Term on the prior application. An application for a mandamus order is a special proceeding. (Civ. Prac. Act, §§ 4, 5, 218, 1315, 1317, 1319; *People ex rel. Curtis* v. *Kidney,* 225 N. Y. 299; Fiero Spec. Proc. [3d ed.] 1351.) A final order determines the rights of the parties. An appeal must be taken from a peremptory mandamus order as from a final order made in a special proceeding. (Civ. Prac. Act, § 1337.) Unless the application is denied without prejudice or leave is granted, or the application is made on a new state of facts, a former determination in a special proceeding is *res judicata,* the same as a judgment. (23 Cyc. 1119, 1223; *Matter of Roberts,* 10 Hun, 253; revd., on other grounds, 70 N. Y. 5; *Wilcox* v. *Gilchrist,* 85 Hun, 1; *Matter*

*of Smal,* 53 How. Pr. 432; *Matter of Clarkson,* 186 App. Div. 575.; affd., 227 N. Y. 599; *Greenwood* v. *Marvin,* 111 id. 423, 440.) I think the petitioner, if aggrieved, was bound to appeal from the prior order denying his application. (*Matter of Livingston,* 34 N. Y. 555; *Matter of Bernheimer,* 47 Hun, 567; *Culross* v. *Gibbons,* 130 N. Y. 447.)

While a village is a municipal corporation (Gen. Corp. Law, § 3, subd. 1) it differs materially from a municipal corporation like a city, because it is only a small collection of houses in the country (Bouv. L. Dict. [Rawle's 3d rev.] 3401; 40 Cyc. 208), and is a subordinate branch of the civil government. (*Weismer* v. *Village of Douglas,* 6 T. & C. 514, 519; affd., 64 N. Y. 91.) Unlike a city, the legislative power of its officers is limited and the sovereign right of legislation lies in the inhabitants. In this respect it greatly resembles a town, and its elections are in some respects similar to town meetings where legislation may be initiated by a certain number of taxpayers. (Village Law, § 56, as amd. by Laws of 1910, chap. 4, and Laws of 1922, chap. 237; Town Law, § 48, as amd. by Laws of 1916, chap. 79.) This system does not ordinarily prevail in populous cities. (*Mills* v. *Sweeney,* 219 N. Y. 213.) The Village Law permitted the board of water commissioners to contract with an individual or corporation for supplying water to the village for extinguishing fires or other public purpose for a period of not longer than five years at a limited expense. (Village Law, § 220.) But if they desired to extend the mains, if the expense exceeded $1,000 in a village of the third class, as is this village (Id. §. 40), such extension could only be made when authorized by a proposition adopted at an election (Id. § 224, as amd. by Laws of 1913, chap. 557); or if money was to be borrowed upon bonds for such work, the proposition must be submitted to the voters (Id. § 128, subd. 6, as amd. by Laws of 1911, chap. 738); and only those who were owners of property assessed upon the last preceding assessment roll were entitled to vote. (Id. § 41, as amd. by Laws of 1919, chap. 33.) It is evident, therefore, that the governance of the village and the decision of all important questions were vested primarily in the taxpaying inhabitants.

Where a proposition has been defeated by a vote of the electors, it cannot again be submitted until the expiration of one year, or until the next annual election. (Id. § 56-a, as added by Laws of 1917, chap. 541.) The statute is silent on the subject of submitting a proposition for reconsideration or rescission. Such silence does not, in my opinion, forbid it. It should not be impossible to remedy hasty and ill-advised action by those who took that action but later discovered their mistake. It

is elementary that any legislative body may reconsider and rescind a proposition once adopted, if no person or any vested interest is affected thereby (*Denton* v. *Jackson*, 2 Johns. Ch. 320, 331; *Allen* v. *Inhabitants of Taunton*, 19 Pick. [Mass.] 485); and where the legislative power resides in the body of the voters, they may take such action. This has been frequently done in town meetings and held valid. (*Morse* v. *Dwight*, 13 Allen [Mass.], 163; *Withington* v. *Inhabitants of Harvard*, 8 Cush. [Mass.] 66; *Stoddard* v. *Gilman*, 22 Vt. 568; *Cox* v. *Mount. Taber*, 41 id. 28; 38 Cyc. 616.) A common council may reconsider its action. (*Ashton* v. *City of Rochester*, 133 N. Y. 187, 192; *People ex rel. New York, W. & B. R. Co.* v. *Waldorf*, 168 App. Div. 473.) So may trustees of a village. (*Harrison* v. *Village of New Brighton*, 110 App. Div. 267.) The Legislature may rescind a power granted unless rights had already vested under its partial exercise. (*Potsdam Electric Light Co.* v. *Village of Potsdam*, 49 Misc. Rep. 18, 21; affd., 113 App. Div. 894.) A dictum to the contrary is found in *People ex rel. Osborn* v. *Trustees of Village of Bellport*, 119 Misc. Rep. 357.) What the voters of this village adopted they might rescind, if no person or vested interest suffered specific injury.

The board of water commissioners when confronted by a new situation entailing additional expense, might well hesitate to proceed further, particularly where a bond issue had been voted for a definite and specific purpose. It was a question which called for the exercise of judgment and discretion in carrying out the public will. The law had provided a method by which they might seek the advice and mandatory direction of the fundamental legislative power of the village. When that advice and direction were obtained, I see no reason why the court should interfere to set aside the decision of the electors. It rests with the inhabitants of small villages to determine how far they shall be taxed to provide public improvements. They may or may not, as they please, have pavements, fire protection, sewers, water works or other improvements now common in larger municipalities. Their system of government is their own and may not be unduly interfered with.

The petitioner has failed to show that he has any vested right or any special interest in this matter whereby he suffers greater detriment than any other citizen. The Western New York Water Company, so far as it appears, is not a party to this proceeding. The contract with it was purely prospective, and it has lost no rights. An order of peremptory mandamus will issue only to compel performance of an official duty clearly imposed by law, where there is no other adequate, specific remedy. The duty must be positive, not discretionary, and the right to its performance must be so clear

as not to admit of a reasonable doubt or controversy. (*Matter of Burr* v. *Voorhis*, 229 N. Y. 382, 387,; *People ex rel. Giles* v. *Klauder-Weldon D. M. Co.*, 180 App. Div. 149; *People ex rel. Delaney* v. *Inter-borough Rapid Transit Co.*, 192 id. 450; appeal dismissed, 230 N. Y. 558.) .The order granted requires the board of water commissioners to perform acts which were not contained in the proposition voted on by the electors in March, 1921. The proposition to be enforced is one the voters declined to accept by the election of August 28, 1922. In other words, the order directs the commissioners to do something they never contemplated doing. It requires them to do what in the exercise of judgment and discretion they have declined to do, and their position has been approved by a majority of the village electors.

The petitioner has failed to show a clear legal right to invoke the assistance of the court; and for the reasons stated the order should be reversed, with costs, and the petition dismissed, with fifty dollars costs.

All concur; CLARK and SEARS, JJ., upon the first ground only.

Order reversed, with costs, and petition dismissed, with fifty dollars costs and disbursements.